{¶ 38} Because I conclude that the trial court erred in adopting Mr. Dietrich's shared parenting plan, I respectfully dissent from the majority's disposition of the first assignment of error. I would reverse and remand as to the schedule of possession of the children, (and this would in turn impact the spousal and child support awards) and order the trial court to implement a plan in which the children spend considerably more time with Mrs. Dietrich.
 {¶ 39} In essence, I conclude that the majority's decision is contrary to the report of Family Conciliation Services ("FCS") psychologist Nancy Huntsman, contrary to the evidence of record, and is unsupported by any evidence as to how Mark Dietrich will sustain care for Kayla and the twins.
 {¶ 40} In relevant part, Dr. Huntsman's report indicated:
 {¶ 41} "* * * Kayla follows an exhausting schedule of treatment. She goes to Akron General twice a week in the mornings (M and TH) for speech therapy, occupational therapy, and physical therapy. She attends conductive education four times a week in the mornings (T, W, F, Sat) * * *. Monday through Friday, she attends school in the afternoons.
 {¶ 42} "* * * *Page 14 
 {¶ 43} "I asked [Mrs. Dietrich] to describe a `day in the life of her family.' She said that, Mr. Dietrich had left for work that day at 4:30 a.m. She got up at 6:30 a.m. and started cleaning up from the night before. Kayla awakened at 7:20 a.m. and the twins got up around 7:25 a.m. * * * Once up, the twins follow her around. She dressed Kayla, put her in her special chair, and served juice all around. She changed the twins' diapers and fixed Kayla's breakfast. The aid came and fed Kayla. Then, she leaves to take Kayla to her morning therapies. Everyone gets home at about noon. Kayla eats. The bus to regular school comes for her about 12:40 or 12:45 p.m. The aid remains in the house while she gets Kayla gets on the bus. The twins go down for a nap around 1/45 [sic] or 2:00 p.m. She cleans the house and makes calls to arrange for services or supplies for Kayla. Kayla comes home about 4:00 p.m. The twins are usually up by then. The aid also arrives about [4:00] p.m. Mr. Dietrich comes home anytime between 3:00 and 5:30 p.m. He plays with the children. She cooks dinner while the aid works with Kayla. * * * Bedtime is between 8:30 and 8:45 p.m.
 {¶ 44} "She described Mr. Dietrich as `very good with the kids.' However, she believes he will have to take on much more than he does now if he is to have residential responsibility for the children for any amount of time. She thinks joint custody would be a good solution, especially with the need for making medical decisions for Kayla, something she doesn't want to do by herself. Mr. Dietrich imagines sole custody with unrestricted visitation for the mother.
 {¶ 45} "* * * Mr. Dietrich said he doesn't see [his mother] as often as he would like, *Page 15 
noting that she is not welcome in his house. * * * He said it was always a bone of contention that his mother didn't help with Kayla, especially since his wife's father helped so much. * * *
 {¶ 46} "* * * [I]t is my opinion * * * that these three children's needs will be best served if these parents do, indeed, establish a shared parenting plan in which both have considerable responsibility for the children. * * * [I]f possible, Kayla needs to live in Broadview Heights so that she can continue to attend her afternoon school. Additionally, she needs one or the other parent during the days to get her to morning therapies and school. The twins, of course, require twice of anything that normal toddlers would require. * * *
 {¶ 47} "Although Mr. Dietrich expressed many concerns about his wife's stability and parenting, I could find nothing to suggest that she is not able to parent these children adequately. * * * I do worry that, despitehis complaints and concerns about his wife's parenting, Mr. Dietrich hasreally done very little of the work-a-day care of these children, mostlybecause he works. I think he may not have an understanding of all thelittle details that go into it.
 {¶ 48} "* * * I would suggest that the parents share responsibilityfor the children according to a scheme which has the children with Mrs.Dietrich through most of the week. Then, while she works weekend shifts, since she will need to earn considerably more money once divorced, Mr. Dietrich can have responsibility for the children [i.e.,] from Thursday through Sunday one week and from Friday through Sunday the next. * * * The *Page 16 
parent who can find a way to remain in the Brecksville Broadview Heights school system should be designated residential parent so as to keep Kayla in her afternoon public school program. Decisions regarding schooling, medical care, and activities should be shared. * * *" (Emphasis added.)
 {¶ 49} The majority's decision fails to acknowledge this important recommendation. In addition, Sarah Crawford, an aid employed by Almost Family, aid Tracy Warner, Carmelia Jarvis, and volunteer Renee Dravis all testified regarding the dedicated care which Mrs. Dietrich, a registered nurse, provides to Kayla, Noah and Malina. Significantly, the evidence demonstrates her particular dedication in obtaining state of the art and continuous therapies for Kayla, and close attention that she provides to Noah, who has medical issues. The evidence also overwhelmingly indicated that Mrs. Dietrich's father, Joseph Mitchell provides essential care for Kayla and has advanced considerable sums and effort for her care. Moreover, Crawford's testimony further indicated that Mr. Dietrich appeared to inappropriately rely upon the aids in watching the twins.
 {¶ 50} Moreover, Mark Dietrich testified that he would receive help from "family members and friends." He did not elaborate upon this plan, but stated that Griswald Special Care would assist him with the care of the children while he is at work. He indicated that he would continue to include Mr. Mitchell and Ms. Dravis in Kayla's care, but the evidence indicated that he had previously excluded them from Kayla's care. He knew Kayla's therapy schedule, but he complained that Mrs. Dietrich had not informed him of all of her therapies. *Page 17 
He insisted that the aids could transport Kayla but he admitted that they are not required to do so and did not know whether Medicaid would pay them for such transportation.[1] He stated that his mother would assist him in caring for the children but she did not testify and the evidence of record indicated that the couple had argued about her failure to help in the past.
 {¶ 51} In accordance with all of the foregoing, I would conclude that the trial court erred in adopting Mark Dietrich's shared parenting plan and I would order the lower court to adopt a plan which places the children primarily in the possession of Mrs. Dietrich. I am compelled to conclude that the trial court abused its discretion by granting Mr. Dietrich possession of the children on a two-week schedule, from Thursday through Monday one week and from Friday through Monday the following week, with Mrs. Dietrich having possession at all other times. In my view, the present situation supports the conclusion that Mrs. Dietrich should have greater possession of the children in light of her greater involvement in attaining and coordinating assistance for Kayla, and, in particular, her alliance with dedicated family members and others and, due to Mr. Dietrich's work hours, lack of a clearly-outlined and feasible plan of care.
[1] 42 U.S.C. § 1396a (70) and various regulations govern non-emergency medical transportation for individuals eligible for medical assistance under state plans. *Page 1